**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SKATTEFORVALTNINGEN,<br><br>                              Plaintiff,<br><br>               vs.<br><br>JOHN VAN MERKENSTEIJN, RICHARD MARKOWITZ, BERNINA PENSION PLAN TRUST, RJM CAPITAL PENSION PLAN TRUST, 2321 CAPITAL PENSION PLAN, BOWLINE MANAGEMENT PENSION PLAN, CALIFORNIA CATALOG COMPANY PENSION PLAN, CLOVE PENSION PLAN, DAVIN INVESTMENTS PENSION PLAN, DELVIAN LLC PENSION PLAN, DFL INVESTMENTS PENSION PLAN, LAEGELER ASSET MANAGEMENT PENSION PLAN, LION ADVISORY INC. PENSION PLAN, MILL RIVER CAPITAL MANAGEMENT PENSION PLAN, NEXT LEVEL PENSION PLAN, RAJAN INVESTMENTS LLC PENSION PLAN, SPIRIT ON THE WATER PENSION PLAN, and TRADEN INVESTMENTS PENSION PLAN,<br><br>                              Defendants. | Civil Action No. _____<br><br>Honorable _____<br><br>November 19, 2019<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Skatteforvaltningen[1] ("**SKAT**"), which is the Customs and Tax Administration of the Kingdom of Denmark, by its attorneys Hughes Hubbard & Reed LLP, alleges against Defendants John van Merkensteijn ("**van Merkensteijn**"), Richard Markowitz ("**Markowitz**"),

---

1.  At the time of the events alleged in this Complaint, Plaintiff was known as "SKAT," and thereafter, pursuant to Danish legal order 804, entered on June 6, 2018, Plaintiff underwent an internal reorganization and changed its legal name to Skatteforvaltningen, effective July 1, 2018.

Bernina Pension Plan Trust ("**Bernina**"), RJM Capital Pension Plan Trust ("**RJM Capital**"), 2321 Capital Pension Plan ("**2321 Capital**"), Bowline Management Pension Plan ("**Bowline**"), California Catalog Company Pension Plan ("**California Catalog**"), Clove Pension Plan ("**Clove**"), Davin Investments Pension Plan ("**Davin Investments**"), Delvian LLC Pension Plan ("**Delvian**"), DFL Investments Pension Plan ("**DFL Investments**"), Laegeler Asset Management Pension Plan ("**Laegeler**"), Lion Advisory Inc. Pension Plan ("**Lion Advisory**"), Mill River Capital Management Pension Plan ("**Mill River**"), Next Level Pension Plan ("**Next Level**"), Rajan Investments LLC Pension Plan ("**Rajan Investments**"), Spirit on the Water Pension Plan ("**Spirit on the Water**"), and Traden Investments Pension Plan ("**Traden Investments**"), as follows:

## I.   <u>INTRODUCTION</u>

1.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.

2.     This case stems from a fraudulent tax refund scheme that deceived SKAT into paying out over 12.7 billion Danish Kroner ("**DKK**"), the equivalent of approximately $2.1 billion (US), of allegedly withheld dividend tax.

3.     The essence of the fraudulent scheme is that each of over 300 entities pretended to own shares in Danish companies listed on the OMX Copenhagen 20 Index, the 20 most-traded stocks in Denmark.  The Danish companies are required to withhold 27% tax on dividends they pay to shareholders.  Under certain double taxation treaties between Denmark and other countries, including the United States, this tax is reimbursable to non-Danish shareholders.

4.     The entities, acting through their agents and representatives, applied to SKAT claiming repayments of tax withheld on dividends that they purported to have earned on shares of Danish companies.  These applications were fraudulent because the claimants did not own the

shares that they claimed to own, they did not earn the dividends they claimed to have earned, and they were not entitled to the tax refunds they claimed.

5.      The claimants effectuated the scheme by appointing agents to apply to SKAT for refunds in respect of shares in Danish companies that they did not own.  The agents submitted the fraudulent applications on behalf of the claimants and their authorized representatives, with false documentation representing that the claimants owned substantial shares in Danish companies, had earned substantial dividends for which tax had been withheld, and other documentation representing that the claimants were entitled to a tax refund.  The agents obtained over $2.1 billion in refunds from SKAT, and distributed the proceeds of the scheme to the claimants and other participants in the fraud.  During the period 2012 to 2015, SKAT received fraudulent requests for tax refunds from several agents on behalf of 277 pension plans in the United States, as well as entities in the United Kingdom, Canada, Malaysia, and Luxembourg.

6.      On June 15, 2015, SKAT received information indicating that certain claimants may have submitted fraudulent tax refund claims based on the double taxation treaty between Denmark and Malaysia.   Based on this information, SKAT undertook an investigation and subsequently discovered that the claimants had submitted requests for tax refunds by misrepresenting that they owned shares in Danish companies, that they had earned substantial dividend income on their shares, and that they were entitled to refunds of tax withheld in respect of those dividends.  Through its investigation, SKAT discovered that these representations were false: the claimants did not own the shares and they were not entitled to a refund of withholding tax.

7.      As a result of these false claims, the claimants and their agents received cash payments of what were supposed to be "refunds" of tax to which they were not entitled.  During

the course of its investigation, SKAT also learned that the scheme involved entities and individuals not just in Malaysia, but also in the United States, Canada, the United Kingdom, and Luxembourg.

8.      On or about August 24, 2015, SKAT stopped paying all claims for refunds of dividend withholding tax while it investigated the fraudulent scheme.

9.      The claimants obtained substantial assistance in the fraudulent scheme from several other entities and individuals, including, but not limited to:

a.      The Authorized Representatives of the claimants, who, among other things, executed at the direction of, and on behalf of, the claimants documents authorizing the Payment Agents to submit the claimants' tax refund claims and to receive from SKAT payments in respect of those claims;

b.      The non-party Payment Agents, which are companies that submitted fraudulent tax refund claims to SKAT at the direction of, and on behalf of, the claimants and Authorized Representatives;

c.      The non-party Broker-Custodians, which are financial institutions that provided statements falsely representing that the claimants owned shares in Danish companies and had earned dividends on those shares; and

d.      The Partners of the claimants, such as Defendants van Merkensteijn, Markowitz, Bernina, and RJM Capital (together, the "**Partner Defendants**").  The Partner Defendants are individuals and entities who formed partnerships with the claimants, helped structure the scheme, and coordinated the submission of fraudulent tax refund claims to SKAT in exchange for the lion's share of the refunds.  The claimant pension plans ultimately retained approximately 1% to 10% of the refund payments that SKAT made as a result of their false claims.

4

10.     The Defendants did know or should have known that these arrangements would cause SKAT to make payments to which the Defendants were not entitled.

11.     SKAT made all the payments to the claimants' Payment Agents, which, on information and belief, distributed the proceeds to other participants in the fraud, including the claimants, in some cases the claimants' Partners, and the Authorized Representatives.

12.     As a result of the overall fraudulent scheme, SKAT paid baseless withholding tax refund claims of approximately $2.1 billion (US).

13.     As a result of the fraudulent claims submitted by the 14 pension plan Defendants in this action, SKAT paid baseless withholding tax refund claims and was damaged in the amount of DKK 820,015,992.76, or at least $120,615,000 (US)[2], plus interest.

## II.     JURISDICTION & VENUE

14.      Pursuant to 28 U.S.C. § 1332(a)(4), this Court has jurisdiction over all claims because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between an agency or instrumentality of a foreign state and citizens of a state or of different states.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.  In the alternative, venue is proper because at least one of the Defendants is subject to the jurisdiction of this Court.

## III.    PARTIES

16.     Plaintiff SKAT is the agency of the government of Denmark charged with the assessment and collection of Danish taxes.  SKAT is located at Østbanegade 123, 2200 København

---

2.   This amount is the result of a conversion from DKK to U.S. Dollars performed on October 4, 2019, utilizing a conversion rate of 1 U.S. Dollar to 6.7986 DKK.

Ø, Denmark.  During the period material to the events described in this Complaint, SKAT used a mailing address of Skattecenter Høje-Taastrup, Postboks 60, DK-2630 Taastrup, Denmark.

17.     Defendant van Merkensteijn is a citizen of the State of New York.  At all times relevant to the allegations in this Complaint, Defendant van Merkensteijn owned and controlled Defendant Bernina, and used Defendant Bernina to participate in the submission of fraudulent refund claims to SKAT.

18.     Defendant Markowitz is a citizen of the State of New York.  At all times relevant to the allegations in this Complaint, Defendant Markowitz owned and controlled Defendant RJM Capital, and used Defendant RJM Capital to participate in the submission of fraudulent refund claims to SKAT.

19.     Defendant Bernina is a trust associated with non-party Bernina Pension Plan, which, in the plan's requests to SKAT for tax refunds, listed its address as 211 Central Park West, Apartment 2G, New York, NY 10024, USA, which is also Defendant van Merkensteijn's former New York home address.  On information and belief, Defendant van Merkensteijn is the sole trustee and beneficiary of Defendant Bernina, and the sole participant, or member, of Bernina Pension Plan.

20.     Defendant RJM Capital is a trust associated with non-party RJM Capital Pension Plan, which, in the plan's requests to SKAT for tax refunds, listed its address as 1010 Fifth Avenue, Suite 1D, New York, NY 10028, USA, which is also Defendant Markowitz's current or former New York home address.  On information and belief, Defendant Markowitz is the sole trustee and beneficiary of Defendant RJM Capital, and the sole participant, or member, of RJM Capital Pension Plan.

21.     Defendant 2321 Capital is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 23 East 10th Street, Apartment 220, New York, NY 10003, USA.  On information and belief, the sole participant, or member, of Defendant 2321 Capital is a citizen of a State of the United States.

22.     Defendant Bowline is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 66 West 88th Street, Unit 5B, New York, NY 10024, USA.  On information and belief, the sole participant, or member, of Defendant Bowline is a citizen of a State of the United States.

23.      Defendant California Catalog is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 212 Cognewaugh Road, Cos Cob, CT 068078, USA.   On information and belief, the sole participant, or member, of Defendant California Catalog is a citizen of a State of the United States.

24.      Defendant Clove is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 27 Sage Street, Holmdel, NJ 07733, USA.  On information and belief, the sole participant, or member, of Defendant Clove is a citizen of a State of the United States.

25.     Defendant Davin Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 77 Fifth Avenue, Suite 17D, New York, NY 10003, USA.  On information and belief, the sole participant, or member, of Defendant Davin Investments is a citizen of a State of the United States.

26.     Defendant Delvian is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 40 West 57th Street, 20th Floor, New York, NY 10019, USA.  On information and belief, the sole participant, or member, of Defendant Delvian is a citizen of a State of the United States.

27.     Defendant DFL Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 11 Hughes Street, Rockville Centre, New York 11570, USA.  On information and belief, the sole participant, or member, of Defendant DFL Investments is a citizen of a State of the United States.

28.     Defendant Laegeler is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 441 West Menomonee Street, Chicago, IL 60614, USA.  On information and belief, each participant, or member, of Defendant Laegeler is a citizen of a State of the United States.

29.     Defendant Lion Advisory is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 45 Perry Street, Suite BW, New York, NY 10014, USA.  On information and belief, the sole participant, or member, of Defendant Lion Advisory is a citizen of a State of the United States.

30.     Defendant Mill River is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 40 West 57th Street, 20th Floor, New York, NY 10019.  On information and belief, the sole participant, or member, of Defendant Mill River is a citizen of a State of the United States.

31.     Defendant Next Level is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 211 Central Park West, Apartment 2G, New York, NY 10024, USA, which is also Defendant van Merkensteijn's former New York home address.  On information and belief, the sole participant, or member, of Defendant Next Level is a citizen of a State of the United States.

32.     Defendant Rajan Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 4506 West Hutchinson, Chicago, IL 60641, USA.  On information

and belief, the sole participant, or member, of Defendant Rajan Investments is a citizen of a State of the United States.

33.     Defendant Spirit on the Water is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 211 Central Park West, Apartment 2G, New York, NY 10024, USA, which is also Defendant van Merkensteijn's former New York home address.   On information and belief, the sole participant, or member, of Defendant Spirit on the Water is a citizen of a State of the United States.

34.     Defendant Traden Investments is a pension plan which, in its requests to SKAT for tax refunds, listed its address as 40 West 57th Street, 20th Floor, New York, NY 10019, USA.  On information and belief, the sole participant, or member, of Defendant Traden Investments is a citizen of a State of the United States.

35.     At all times material to the allegations in this Complaint, the defendant Pension Plans purported to be trusts forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code, exempt from taxation under section 501(a) of the United States Internal Revenue Code, and residents of the United States of America for purposes of U.S. taxation.

## IV.     FACTUAL ALLEGATIONS

### A.     The Danish Withholding Tax System

36.     Withholding tax is a common fiscal device by which taxes are deducted at the source by a payer of income, and are reported to the relevant tax authority.  In this case, the relevant tax authority is SKAT.

37.     Under the Danish Withholding Tax Act section 65, Danish companies are required to withhold 27% of the dividend distributed as to their shares.

38.     Foreign shareholders may be entitled to a refund if the withheld tax exceeds the amount of tax owed according to a double taxation treaty between Denmark and the shareholder's country of residence.

39.     A double taxation treaty between Denmark and the United States[3] allows for refund of tax withheld on dividends paid by Danish companies to U.S. pension plans, which are exempt from taxation.

40.     SKAT paid claims for refunds of dividend withholding tax made by claimants who represented that they had shareholdings in Danish companies and that they had received dividends on those shareholdings net of the tax.  The claimants submitted refund claims seeking the full 27% withholding tax that had allegedly been withheld from distributions on shares that the claimants purported to own.

41.     It was SKAT's normal practice to accept claims from designated payment agents and to transmit refunds to claimants through their designated payment agents.

**B.**    **The Fraudulent Scheme**

42.     As a result of its investigation, SKAT determined that, during the period 2012 through 2015, it received fraudulent dividend withholding tax refund claims as part of a scheme involving (i) a pension plan or other claimant, (ii) an Authorized Representative, (iii) a Payment Agent, and (iv) a Broker-Custodian.  The respective roles of each of these participants are described in further detail in paragraphs 49 through 111 below.

---

3.   Protocol Amending Tax Convention with Denmark, U.S.-Den., art. 10, ¶ 3(c), May 2, 2006, S. Treaty Doc. No. 109-19 (amending Convention and Protocol Between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, S. Treaty Doc. No. 106-12).

### 1.     The Fraudulent Refund Claims Process

43.     The claimants submitted fraudulent claims to SKAT through Payment Agents, including non-parties Acupay System LLC ("**Acupay**") and Goal TaxBack Limited ("**Goal**"), each of which submitted claims by mail or by email transmissions.

44.     The claimants received payments with respect to their refund claims from their designated Payment Agents, to which SKAT transmitted payment by bank transfer.

45.     Each of the claimants provided the following documentation to SKAT through their designated agents:

    a.     a short cover letter, printed on a Payment Agent's letterhead and addressed to SKAT in Taastrup, Denmark;

    b.     a SKAT "Claim to Relief from Danish Dividend Tax" form (the "**Claim Form**"), which set out:

        i.     the identity of the claimant representing that it owned the relevant shares and had received dividends net of withholding tax;

        ii.     the amount of the tax refund claim;

        iii.     a certification that the claimant was covered by the relevant double taxation treaty between Denmark and the country in which the claimant was resident; and

        iv.     the bank account to which SKAT should pay the claim;

    c.     a "credit advice" note purporting to describe the shareholding (or security) and the amount of dividend tax withheld;

    d.     a signed Power of Attorney, by which the claimant's Authorized Representative appointed a Payment Agent to act on behalf of the stated claimant; and

e.      in respect of United States-based pension plans, a statement from the Internal Revenue Service ("**IRS**"), certifying that each pension plan was (I) a trust forming part of a pension, profit sharing, or stock bonus plan qualified under section 401(a) of the United States Internal Revenue Code (the "**Code**"), (II) exempt from U.S. taxation under section 501(a) of the Code, and (III) resident in the United States for purposes of United States taxation.

46.     The fraudulent claims alleged shareholdings in some of the largest Danish listed companies belonging to the OMX Copenhagen 20 Index in Denmark.

47.     It was SKAT's practice to pay claims that included the required supporting documentation.

48.     SKAT made payments by bank transfer to the Payment Agents for the benefit of the claimants.

### 2.     The Role of the Claimants

49.     Out of the over 300 claimants that SKAT has, to date, determined were participants in the fraudulent scheme, 277 were in the United States.

50.     Each of the claimants made withholding tax refund claims through their Payment Agents, as described in paragraphs 43 through 45, above.

51.     As part of the fraudulent claims, each of the Authorized Representatives confirmed to SKAT that they were agents of the claimants and were authorized to act on behalf of the claimants with respect to the dividend withholding tax refund claims.

52.     As part of their fraudulent claims, each of the claimants designated one of the Payment Agents as its agent to act on behalf of that claimant with respect to the claim.

53.     Each of the claimants represented to SKAT that they held shares in, and received dividends net of withholding tax from, large Danish listed companies.  Between August 20, 2012

and September 17, 2014, the Defendants in this action caused 327 separate withholding tax refund claims to be submitted to SKAT, representing that fourteen claimants were entitled to refunds totaling DKK 820,015,992.76, or at least $120,615,000 (US).

54.     Between September 19, 2012 and October 9, 2014, SKAT paid the Defendant plans DKK 820,015,992.76, or at least $120,615,000 (US).  The plans distributed a significant portion of these funds to the Partner Defendants.

55.     Defendant 2321 Capital made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 59,259,338.98.  These refund claims were submitted to SKAT on the following dates:  April 19, 2013; May 16, 2013; September 20, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 4, 2014.

56.     Based on the false refund claims listed in paragraph 55, SKAT made payments totaling DKK 59,259,338.98 to Defendant 2321 Capital on the following dates:  May 13, 2013; June 10, 2013; October 17, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

57.     Defendant Bowline made thirteen (13) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 32,623,807.40.  These refund claims were submitted to SKAT on the following dates:  December 11, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 4, 2014.

58.     Based on the false refund claims listed in paragraph 57, SKAT made payments totaling DKK 32,623,807.40 to Defendant Bowline on the following dates:  December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

59.     Defendant California Catalog made twenty-seven (27) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,239,884.94.  These refund claims were submitted to SKAT on the following dates:  August 20, 2012; December 10, 2012; December 31, 2012; March 19, 2013; April 19, 2013; May 16, 2013; August 29, 2013; December 10, 2013; January 6, 2014; May 16, 2014; May 27, 2014; and September 4, 2014.

60.     Based on the false refund claims listed in paragraph 59, SKAT made payments totaling DKK 68,239,884.94 to Defendant California Catalog on September 19, 2012; January 15, 2013; April 10, 2013; May 13, 2013; June 10, 2013; October 1, 2013; December 20, 2013; January 28, 2014; July 3, 2014; and October 9, 2014.

61.     Defendant Clove made fourteen (14) separate withholding tax refund claims and represented that it was entitled to refunds totaling DKK 36,671,823.15.  These refund claims were submitted to SKAT on the following dates: December 6, 2013; December 13, 2013; March 20, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; April 24, 2014; May 19, 2014; and September 15, 2014.

62.     Based on the false refund claims listed in paragraph 61, SKAT made payments totaling DKK 36,671,823.15 to Defendant Clove on the following dates: December 17, 2013; December 20, 2013; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and October 9, 2014.

63.     Defendant Davin Investments made twenty-four (24) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 62,335,426.34.  These refund claims were submitted to SKAT on the following dates:  June 12, 2013; September 20, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 17, 2014.

64.     Based on the false refund claims listed in paragraph 63, SKAT made payments totaling DKK 62,335,426.34 to Defendant Davin Investments on the following dates:  June 21, 2013; October 17, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

65.     Defendant Delvian made twenty-eight (28) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 67,197,056.32.  These refund claims were submitted to SKAT on the following dates:  August 31, 2012; December 14, 2012; December 21, 2012; March 12, 2013; March 21, 2013; April 8, 2013; April 12, 2013; April 17, 2013; April 23, 2013; April 26, 2013; May 8, 2013; August 28, 2013; December 6, 2013; December 13, 2013; March 14, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; April 24, 2014; May 19, 2014; and August 15, 2014.

66.     Based on the false refund claims listed in paragraph 65, SKAT made payments totaling DKK 67,197,056.32 to Defendant Delvian on the following dates:  September 19, 2012; January 15, 2013; April 10, 2013; April 15, 2013; April 29, 2013; May 7, 2013; June 11, 2013; September 9, 2013; December 17, 2013; December 20, 2013; March 26, 2014; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and September 3, 2014.

67.     Defendant DFL Investments made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 58,539,511.97.  These refund claims were submitted to SKAT on the following dates:  April 19, 2013; May 16, 2013; August 29, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 17, 2014.

68.     Based on the false refund claims listed in paragraph 67, SKAT made payments totaling DKK 58,539,511.97 to Defendant DFL Investments on the following dates:  May 13,

2013; June 10, 2013; October 1, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

69.     Defendant Laegeler made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 58,152,480.95.  These refund claims were submitted to SKAT on the following dates: April 19, 2013; May 16, 2013; August 29, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 17, 2014.

70.     Based on the false refund claims listed in paragraph 69, SKAT made payments totaling DKK 58,152,480.95 to Defendant Laegeler on the following dates: May 13, 2013; June 10, 2013; October 1, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

71.     Defendant Lion Advisory made twenty-eight (28) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 71,184,845.65.  These refund claims were submitted to SKAT on the following dates: August 31, 2012; December 14, 2012; December 21, 2012; April 11, 2013; April 17, 2013; April 23, 2013; April 26, 2013; August 28, 2013; December 6, 2013; December 13, 2013; April 1, 2014; April 8, 2014; April 10, 2014; April 24, 2014; May 19, 2014; and August 15, 2014.

72.     Based on the false refund claims listed in paragraph 71, SKAT made payments totaling DKK 71,184,845.65 to Defendant Lion Advisory on the following dates: September 19, 2012; January 15, 2013; April 22, 2013; April 29, 2013; May 7, 2013; September 9, 2013; December 17, 2013; December 20, 2013; April 24, 2014; May 6, 2014; June 17, 2014; and September 3, 2014.

73.     Defendant Mill River made twenty-eight (28) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 68,724,181.76.  These refund claims were submitted to SKAT on the following dates:  August 31, 2012; December 14, 2012; December 21, 2012; March 12, 2013; March 21, 2013; April 8, 2013; April 12, 2013; April 17, 2013; April 23, 2013; April 26, 2013; May 8, 2013; August 21, 2013; December 6, 2013; December 13, 2013; March 14, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; April 24, 2014; May 19, 2014; and August 15, 2014.

74.     Based on the false refund claims listed in paragraph 73, SKAT made payments totaling DKK 68,724,181.76 to Defendant Mill River on the following dates:  September 12, 2012; January 15, 2013; April 10, 2013; April 15, 2013; April 29, 2013; May 7, 2013; June 11, 2013; September 9, 2013; December 17, 2013; December 20, 2013; March 26, 2014; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and September 3, 2014.

75.     Defendant Next Level made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 60,406,334.19.  These refund claims were submitted to SKAT on the following dates:  April 19, 2013; May 16, 2013; August 29, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and August 19, 2014.

76.     Based on the false refund claims listed in paragraph 75, SKAT made payments totaling DKK 60,406,334.19 to Defendant Next Level on the following dates:  May 13, 2013; June 10, 2013; October 1, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and August 29, 2014.

77.     Defendant Rajan Investments made twenty-six (26) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 59,742,677.42.  These

refund claims were submitted to SKAT on the following dates: February 14, 2013; March 19, 2013; April 19, 2013; May 16, 2013; August 29, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 27, 2014; and September 17, 2014.

78.      Based on the false refund claims listed in paragraph 77, SKAT made payments totaling DKK 59,742,677.42 to Defendant Rajan Investments on the following dates: March 1, 2013; April 10, 2013; May 13, 2013; June 10, 2013; October 1, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and October 9, 2014.

79.      Defendant Spirit on the Water made twenty-three (23) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 60,248,127.87.  These refund claims were submitted to SKAT on the following dates:  April 19, 2013; May 16, 2013; September 20, 2013; December 10, 2013; January 6, 2014; March 20, 2014; April 17, 2014; May 28, 2014; August 19, 2014.

80.      Based on the false refund claims listed in paragraph 79, SKAT made payments totaling DKK 60,248,127.87 to Defendant Spirit on the Water on the following dates:  May 13, 2013; June 10, 2013; October 17, 2013; December 20, 2013; January 28, 2014; May 9, 2014; May 28, 2014; July 3, 2014; and August 29, 2014.

81.      Defendant Traden Investments made twenty-four (24) separate withholding tax refund claims, and represented that it was entitled to refunds totaling DKK 56,690,495.82.  These refund claims were submitted to SKAT on the following dates:  April 3, 2013; April 8, 2013; April 12, 2013; April 17, 2013; April 23, 2013; April 26, 2013; April 30, 2013; August 21, 2013; December 6, 2013; December 13, 2013; March 20, 2014; March 24, 2014; March 25, 2014; March 26, 2014; March 28, 2014; April 8, 2014; April 10, 2014; April 24, 2014; May 19, 2014; and September 15, 2014.

82.     Based on the false refund claims listed in paragraph 81, SKAT made payments totaling DKK 56,690,495.82 to Defendant Traden Investments on the following dates:  April 15, 2013; April 29, 2013; May 7, 2013; May 13, 2013; September 9, 2013; December 17, 2013; December 20, 2013; April 23, 2014; April 24, 2014; May 6, 2014; June 17, 2014; and October 9, 2014.

83.     In fact, these pension plan Defendants did not own the shares they represented to SKAT that they owned, and had no dividend tax withheld.

### 3.     The Role of the Partner Defendants

84.     Defendants van Merkensteijn and Markowitz, using Defendants Bernina, RJM Capital, or other entities, formed partnerships with the fourteen Defendant plans (or identically named trusts created for the plans) and other partners not named as defendants herein, through which Defendants van Merkensteijn and Markowitz caused the fraudulent refund claims to be submitted to SKAT.

85.     In exchange for their participation in the fraudulent scheme through these partnerships, the Partner Defendants and other partners not named as defendants herein received the lion's share of the refunds, while the pension plan Defendants retained a small percentage of the refunds.  The Partner Defendants and the other partners not named as defendants herein received the large majority of the refunds despite the fact that none of the partners or the individuals who owned and controlled the partner entities were members of the pension plans that purported to own shares in Danish companies and to be entitled to refunds from SKAT.

86.     Pursuant to the partnership agreements entered into with each of 2321 Capital, Bowline, California Catalog, Clove, Delvian, DFL Investments, Lion Advisory, Next Level, Rajan Investments, Spirit on the Water, and Traden Investments (or identically named trusts created for the plans), Defendants Markowitz and van Merkensteijn each received, either directly or through

Defendant Bernina (for Defendant van Merkensteijn) and Defendant RJM Capital (for Defendant Markowitz) or other entities owned and controlled by Defendants Markowitz and van Merkensteijn, 23.75% of the refund claims paid by SKAT.

87.     Pursuant to the partnership agreements entered into with each of Davin Investments, Laegeler, and Mill River (or identically named trusts created for the plans), Defendants Markowitz and van Merkensteijn each received, either directly or through Defendant Bernina (for Defendant van Merkensteijn) and Defendant RJM Capital (for Defendant Markowitz) or other entities owned and controlled by Defendants Markowitz and van Merkensteijn, 22.50% of the refund claims paid by SKAT.

88.     The Partner Defendants and other partners not named as defendants herein controlled the Defendant plans through the partnerships they formed, and used the claimants to perpetrate the fraud against SKAT.  Through these partnerships, the Partner Defendants conspired with the Defendant plans to defraud SKAT.  Each of the partnership agreements was executed by the relevant plan participant, who signed on behalf of the plan, or in some cases, on behalf of an affiliated trust that was created to hold the plan's assets.

89.     Pursuant to their partnership agreements with the claimants, the Partner Defendants provided a nominal capital contribution to the partnership, which established the refund percentage each partner would receive.  For example, under the "General Partnership Agreement of Delvian General Partnership," signed by Defendant Markowitz on May 22, 2012, an entity controlled by the Partner Defendants and two other partners provided an initial capital contribution to the partnership of $95, and Defendant Delvian provided a contribution of $5.  Thereafter, the Partner Defendants and the two other partners received 95% (or 23.75% each) of the refund amounts initially obtained by Defendant Delvian, whereas Defendant Delvian received only 5%.

90.     The Partner Defendants were instrumental in setting up the fraudulent scheme, and coordinated the creation and submission to SKAT of the fraudulent documents purporting to show the fourteen plan Defendants' ownership of Danish shares.

91.     At times relevant to the allegations in this Complaint, Defendants van Merkensteijn and Markowitz served as Directors of a financial services firm based at 40 West 57th Street, 20th Floor, New York, NY 10019.  Each of the executed partnership agreements entered into between the Partner Defendants and plan Defendants listed the firm's 40 West 57th Street address as the address of the partnership.  In addition, at least nine different claimants listed that firm's West 57th Street address in their fraudulent refund claims to SKAT, including Defendants Delvian, Mill River, and Traden Investments.

92.     Four of the other fourteen Defendant plans, Defendants Bowline, Clove, DFL Investments, and Lion Advisory, listed the home addresses of employees and/or directors of that financial firm in their fraudulent claims to SKAT.  Two additional plan Defendants, Defendants Next Level and Spirit on the Water, listed Defendant van Merkensteijn's former New York home address in their fraudulent claims to SKAT.

93.     In addition to partnering with the fourteen pension plan Defendants (or identically named trusts created for the plans) listed above, Defendant van Merkensteijn was the sole participant in six additional pension plans, including non-party Bernina Pension Plan, that submitted fraudulent refund claims to SKAT, and was a participant with three other individuals, including Defendant Markowitz, in three additional plans.

94.     Defendant van Merkensteijn signed Power of Attorney documents as the Authorized Representative of at least six different claimants, including signing as the "authorised signer" of non-party Bernina Pension Plan with respect to its own fraudulent claims to SKAT.

21

95.     In addition to partnering with the fourteen pension plan Defendants listed above (or identically named trusts created for the plans), Defendant Markowitz was similarly the sole participant in six additional pension plans, including non-party RJM Capital Pension Plan, that submitted fraudulent refund claims to SKAT, and was a participant with three other individuals, including Defendant van Merkensteijn, in three additional plans.

96.     Defendant Markowitz incorporated non-party RJM Capital LLC, the plan sponsor for non-party RJM Capital Pension Plan, in 2007.  Defendant Markowitz signed RJM Capital LLC's Certificate of Formation filed with the State of Delaware listing him as the "Authorized Person" of the LLC.

97.     Each of Defendant Markowitz's wife, his sister, and his brother-in-law, was the sole participant in a pension plan that submitted fraudulent refund claims to SKAT.

98.     Defendant Markowitz signed Power of Attorney documents as the Authorized Representative of at least four different claimants that submitted fraudulent refund claims to SKAT.

### 4.     The Role of the Claimants' Authorized Representatives

99.     Each Authorized Representative executed at the direction of, and on behalf of, the claimant for which he or she was the Authorized Representative a form entitled "Power of Attorney."  By the Power of Attorney, the claimant, acting through its respective Authorized Representative, granted the Payment Agent authority to act on behalf of the claimant.

100.     The Authorized Representatives for the fourteen claimants that formed partnerships with the Partner Defendants executed power of attorney documents appointing either non-party Acupay or non-party Goal as the Payment Agent for the plan.

101.     For example, one of the Authorized Representatives executed on behalf of Defendant 2321 Capital a "Special Power of Attorney" dated March 26, 2013, that granted to non-

party Acupay authority "to pursue and file for reductions in rates of tax withholding in [the plan's] name for which [the plan is] eligible, to oversee this process, and to collect refunds of excess withholding tax to which [the plan is] entitled on [the plan's] behalf." The Authorized Representative described himself as the "authorised signer" of Defendant 2321 Capital.

102.    Another Authorized Representative executed on behalf of Defendant Delvian a "Power of Attorney" dated August 3, 2012, that granted to non-party Goal authority "to be the attorney of [the plan] and in [the plan's] name and otherwise on [the plan's] behalf and as [the plan's] act and deed to sign, seal, execute, deliver, perfect and do all deeds, instruments, acts and things which may be required (or which [Goal] shall consider requisite) for or in connection with the provision of any tax services provided to [the plan] from time to time, including  the reclaiming from any taxation authority in any jurisdiction (as appropriate) amounts in respect of payments made to [the plan] or through [Goal] on behalf of [the plan]." The Authorized Representative described herself as the "Trustee" of Defendant Delvian.

103.    As a result of the executed power of attorney documents, Payment Agents Acupay and Goal also agreed to act for the Authorized Representatives and be subject to their direction and control with respect to the plans' claims to SKAT.

### 5.    The Role of the Payment Agents

104.    The Payment Agents submitted the fraudulent withholding tax refund claims at the direction of the claimants and Authorized Representatives and on behalf of the claimants.

105.    By means of the Power of Attorney described in paragraphs 99-100 above, each claimant and Authorized Representative authorized their respective Payment Agent to act on their behalf and be subject to their control with respect to submitting the withholding tax refund claims.

106.    With each claim, the Payment Agents submitted substantially similar cover letters attaching the documentation described in paragraph 45 above.

107.     In connection with each Claim Form, the Payment Agent:

a.     provided its email address as the contact address for the claimant on whose behalf it was acting;

b.     signed and stamped the form, and stated it was applying on behalf of the claimant;

c.     enclosed the Power of Attorney executed by the claimant's Authorized Representative; and

d.     requested that SKAT pay the claim to its bank account.

108.     As per the directions included in the submission to SKAT, the Payment Agents received payment of the refunds from SKAT on behalf of the claimants.  The Payment Agents subsequently distributed the proceeds to the claimants and their partners and the other participants in the fraud, including the Authorized Representatives, and the Payment Agents themselves.

**6.     The Role of the Broker-Custodians**

109.     Each entity claiming a withholding tax refund submitted to SKAT a "credit advice," "income advice," "tax voucher" or similar document from a Broker-Custodian that purported to show the claimant's ownership of shares in Danish companies listed on the OMX Copenhagen 20 Index.

110.     By way of example, with respect to Defendant 2321 Capital, one example of a "Dividend Credit Advice":

a.     is made out by Solo Capital Partners LLP;

b.     is dated August 13, 2014;

c.     purports to certify the plan's ownership of 3,340,952 shares in TDC A/S (a genuine company), whose shares were (and are) publicly traded on the OMX Copenhagen 20 Index in Denmark; and

d.      states an International Securities Identification Number ("**ISIN**") for TDC A/S shares as "DK0060228559".  An ISIN is a twelve-character alpha-numeric code that uniquely identifies securities for trading and settlement purposes.

111.    Defendant 2321 Capital never owned the shares described above, never received any dividend from Danish companies in which it was a purported shareholder and was not entitled to claim a refund of dividend withholding tax.  The other claims that the Defendant plans and the Partner Defendants submitted or caused to be submitted to SKAT were similarly fraudulent.

## CAUSES OF ACTION

## COUNT I

### (Fraud – Against All Defendants)

112.    SKAT repeats and realleges paragraphs 1 through 111 above as if fully set forth herein.

113.    Defendants intentionally, knowingly and/or recklessly made or caused to be made the material, false and fraudulent statements described in paragraphs 45-46, and 53 through 83 to support claims for withholding tax refund payments.

114.    Defendants intentionally, knowingly, and/or recklessly made or caused to be made these false and fraudulent statements to induce SKAT to pay the claims, including through a civil conspiracy in furtherance of the fraud.

115.    In reliance on the false and fraudulent misrepresentations, SKAT paid baseless withholding tax refund claims of DKK 820,015,992.76, or at least $120,615,000 (US), and thereby suffered damages of that amount, plus interest.

116.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT II

### (Aiding and Abetting Fraud – Against All Defendants)

117.    SKAT repeats and realleges paragraphs 1 through 116 above as if fully set forth herein.

118.    As alleged above, a massive fraud was perpetrated on SKAT by the claimants and their partners, the Authorized Representatives, the Payment Agents, and/or other non-parties.

119.    As alleged in paragraphs 1 through 111 above, the Defendants, with knowledge, participated in the massive fraud on SKAT.

120.    The Defendants acted with knowledge, willful blindness, and/or recklessness in participating in the submission of claims for refunds of dividend withholding tax to SKAT with knowledge that they were not entitled to receive any refunds.

121.    The Defendants intentionally furthered the fraud and substantially assisted the fraud through their conduct described in paragraphs 1 through 111 above.

122.    As a direct and natural cause of the Defendants' aiding and abetting of the fraudulent scheme, SKAT has suffered substantial damages.

123.    Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty, entitling SKAT to punitive damages.

## COUNT III

### (Negligent Misrepresentation – Against All Defendants)

124.    SKAT repeats and realleges paragraphs 1 through 123 above as if fully set forth herein.

125.    In submitting claims for withholding tax refund payments, Defendants had a duty to SKAT to provide claims information that was truthful, accurate, and complete in all material respects.

126.     Defendants made material misstatements described in paragraphs 45-46, and 53 through 83, above, in connection with the withholding tax refund claims they submitted or caused to be submitted to SKAT.  Defendants knew, or should have known, that these statements were inaccurate.

127.     Defendants' material misstatements were calculated to induce SKAT to rely upon them, and Defendants expected SKAT to rely upon them.

128.     SKAT reasonably relied on the misstatements while reviewing Defendants' claims, and as a direct and proximate result incurred damages of DKK 820,015,992.76, or at least $120,615,000 (US), plus interest.

<u>**COUNT IV**</u>

**(Payment By Mistake – Against All Defendants)**

129.     SKAT repeats and realleges paragraphs 1 through 128 above as if fully set forth herein.

130.     This is a claim for monies SKAT paid to the Defendants because of mistaken understandings of fact.

131.     SKAT paid the Defendants the amounts claimed as withholding tax refunds with the mistaken belief that the claimants had submitted valid claims with valid supporting documentation.

132.     SKAT's mistaken belief was material to its decision to pay the claims.

133.     SKAT suffered a loss as a result of its mistaken payments.

134.     The Defendants are liable to account and pay to SKAT the payments that SKAT made in error to the Defendants, plus interest.

## COUNT V

### (Unjust Enrichment – Against All Defendants)

135.    SKAT repeats and realleges paragraphs 1 through 134 above as if fully set forth herein.

136.    This is a claim by SKAT for recovery of monies by which the Defendants were unjustly enriched.

137.    By obtaining proceeds from withholding tax refund claims, directly or indirectly, to which they were not entitled, the Defendants were unjustly enriched.

138.    SKAT suffered a loss because of the Defendants' unjust enrichment.

139.    The Defendants are liable to account and pay to SKAT the amount of dividend withholding tax refund payments they received from SKAT to which they were not entitled, plus interest.

## COUNT VI

### (Money Had & Received – Against All Defendants)

140.    SKAT repeats and realleges paragraphs 1 through 139 above as if fully set forth herein.

141.    As a result of their false refund claims, Defendants received proceeds from withholding tax refunds to which they were not entitled.

142.    It is against equity and good conscience to permit Defendants to keep these monies, and they should account for and pay to SKAT the amount of withholding tax refund payments they received to which they were not entitled, plus interest.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff SKAT requests that this Court enter judgment in its favor against Defendants as follows:

1.      For Counts I, II, and III, for fraud, aiding and abetting fraud, and negligent

        misrepresentation, the damages sustained by SKAT as a result of the Defendants'

        wrongful acts, plus pre-judgment interest, fees, costs and expenses.

2.      For Counts IV, V, and VI, for payment by mistake, unjust enrichment, and money

        had and received, the damages sustained or the amounts by which the Defendants

        were paid by mistake or unjustly enriched, or by which the Defendants received

        money to which they were not entitled, plus pre-judgment interest, fees, costs and

        expenses.

3.      For Counts I, II, punitive damages.

4.      The costs of this action.

5.      All other and further relief that is just and proper.

**<u>JURY DEMAND</u>**

Plaintiff SKAT demands a jury trial on all issues so triable.

                                Respectfully submitted,


                                HUGHES HUBBARD & REED LLP


                                 s/ Marc A. Weinstein
                                William R. Maguire
                                Marc A. Weinstein
                                John T. McGoey
                                One Battery Park Plaza
                                New York, New York  10004-1482
                                (212) 837-6000 (t)
                                (212) 422-4726 (f)
                                Bill.maguire@hugheshubbard.com
                                Marc.weinstein@hugheshubbard.com
                                John.mcgoey@hugheshubbard.com

29

Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)