# Exhibit 8

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

CUSTOMS AND TAX ADMINISTRATION OF
THE KINGDOM OF DENMARK
(SKATTEFORVALTNINGEN) TAX REFUND
SCHEME LITIGATION

This document relates to all associated dockets

Master Docket 18-md-02865 (LAK)
ECF Case

---

## DECLARATION OF FOREIGN LAW OF ANDERS ØRGAARD

## BACKGROUND

I, the undersigned Anders Ørgaard, state the following:

1.      I have written this legal opinion at the request of counsel for certain defendants in the above-captioned case, to be submitted to the courts in New York, in the United States of America, as evidence of Danish law.

2.      The opinion rendered herein is a legal opinion on legal matters, which I am entitled to give on the basis of my knowledge of Danish law.

3.      My compensation for rendering this opinion has been agreed on a per-hour fee basis.  My compensation does not depend in any way on the opinions I have rendered.

4.      My law firm, TVC, has also been retained as counsel for Richard Markowitz and to advise certain pension plans in connection with their appeals before the Danish National Tax Tribunal agency in Denmark.

5.      I have based my legal opinion exclusively on official rules, case law, and treatises, without regard to any fact of which I may have been informed by Defendants or any other person.

6.      Attached to my declaration are true and correct copies of Danish laws, regulations, and materials that I have cited herein, and accompanying English translations as needed.

## EXPERTISE

7.      I am a Professor of Law and teach in the Department of Law at Aalborg University in Denmark.

8.      I received my law degree from Aarhus University in 1991.  Since that time, I have practiced law at several law firms, and currently work part-time at the TVC Law Firm.  I have the right to appear before the Danish Supreme Court, which is the highest court in the nation, and the Danish High Courts, which sit immediately below the Supreme Court.

1

9.      I started teaching law in 2002 when I joined the faculty of the University of Southern Denmark as Associate Professor in the Law Department.  In 2004, I joined the faculty of Aarhus University as Associate Professor in the Law Department.  In 2007, I joined the faculty of Aalborg University as Professor in the Law Department, and continue to hold that position today.

10.      I have a Ph.D. in the law and publish widely in the areas of procedural law and property law.  I have written books and articles on insolvency law, arbitration law, contract law, buyers' rights, corporate law, and tort law.

11.      Beyond practicing and teaching the law, I serve or have served as Chairman of the Practice Committee at Aalborg University; Chairman of the Board of The Law Students' Legal Aid at Aalborg University and Member of the European Law Institute in Vienna.  I have also been honored as a Knight of the Order of the Dannebrog by Her Majesty Queen Margrethe II.

## LEGAL OPINION

### *The Danish Statute Of Limitations*

12.      The Danish Limitations Act (*Forældelsesloven*) sets forth the law relating to statutes of limitations for all claims seeking monetary damages.  Section 3(1) of the Limitations Act provides:

> The limitation period is three years, unless otherwise provided by other provisions.

Thus, the general rule is that there is a three-year statute of limitations for monetary claims, and that rule applies to all such claims, including claims brought by the tax authority.

13.      In some circumstances, the statute of limitations may be suspended.  Specifically, Section 3(2) of the Limitations Act provides:

> If the claimant was unaware of the claim or the debtor, the limitation period stated in section 3(1) only runs from the day on which the claimant became, or should have become, aware thereof.

Thus, the three-year period begins at the time when a plaintiff is aware of its claim or should have become aware of it.

14.     Even if the statute of limitations is suspended, civil claims not related to breach of contract must be brought within ten years of the act that caused the loss.  Section 3(3) of the Limitations Act provides:

> The limitation period expires no later than . . . 10 years after the end of the injurious act causing the damage or loss in respect of claims for damage or loss incurred in non-contractual relations not covered by [the previous sub-section].

### When The Tax Authority "Should Have Become Aware" Of Its Claim

15.     There are numerous reported cases in Denmark that address the issue of when the tax authority *should have known* of its claims.  Before I discuss those cases, it is important to note that like any public authority in Denmark, the tax authority is subject to the inquisitorial procedure. This means that the tax authority is obliged to obtain all relevant information in a case before it renders a decision, such as a decision to approve a tax reclaim application and pay out withheld dividend tax.  This obligation is derived from generally accepted administrative principles and is set forth in the Danish Tax Agency's Legal Guide.

16.     Specifically, section A.A.7.4.3 of SKAT's Legal Guide, available at https://skat.dk/skat.aspx?oid=2925, states:

> The official principle is the principle that a public authority is obliged to obtain all relevant information in a case before a decision is taken.

> The official principle is also called the principle of investigation.

> The official principle is a legal principle.

> The official principle means that SKAT must ensure that a case is sufficiently informed to make a correct decision.  SKAT must therefore ensure that all relevant information is provided and involved in the case.  This applies both to the factual and the legal situation.

It is a concrete assessment in each case whether SKAT has sufficient information to make a correct decision.

The information may be obtained by asking the taxpayer to provide the information if the taxpayer has the opportunity to do so. However, SKAT must subsequently check whether the taxpayer's information is correct.

The information may also be obtained from other authorities or third parties . . . .

If SKAT has not complied with the official principle, this may result in the decision being invalid, as the official principle is a guarantee requirement.

17.     Thus, in evaluating whether the tax authority "should have known" that a claim existed, it is important to bear in mind the inquisitorial procedure. Because it has an obligation to ascertain all relevant information before taking action, the tax authority cannot simply passively rely on the information received from taxpayers.

18.     In addition to the inquisitorial procedure, SKAT also has what is known in Danish law as an investigation obligation. It is not sufficient for SKAT to say that it was not aware of the existence of its claim because it did not know about certain facts. Instead, where the tax authority asserts that it is not aware of the existence of the claim because it lacks certain information, the relevant question is whether the tax authority should have investigated the matter further. Here, it is important to consider whether the tax authority had any indications that should have pointed to the need for further investigation. Professor Bo von Eyben teaches law at the University of Copenhagen and is considered a leading authority on statutes of limitations. In his treatise on this subject, Professor von Eyben writes:

In assessing whether the claimant should have acquired knowledge of his claim, the courts are not precluded from finding that the claimant should have shown a higher degree of care than is usually exercised in similar situations. The decision will always be based on a *case-by-case assessment of whether the claimant has shown the degree of care that may be required in the situation concerned*. The key question will typically be *whether the claimant should have launched investigations etc., which could have given him or her sufficient information to assert the claim*.

*Forældelse*, 2nd ed., 2019, page 445.

19.     Although the comment quoted immediately above relates to the investigation obligation in general, courts have applied this standard to the tax authority.  Professor von Eyben explains:

> The decisive factor is whether *the tax authorities actually had sufficient information to be able to correctly calculate the tax*, or whether the tax authorities did have *grounds to seek additional information to clarify the facts*—grounds that would typically appear from the information already available, but which can also be based on the tax authorities generally paying special attention to the matter in question.

*Forældelse*, 2nd ed., 2019, page 601.

20.     Danish courts have not hesitated to deem claims of the tax authority to be time-barred when it should have known of the basis for its claims years earlier.  In the paragraphs that follow, I describe the salient facts and rulings.

21.     In one case, a farmer ran two businesses:  an agricultural business registered for VAT and a real estate agency that was not registered for VAT.  In 1972 and 1973, the farmer offset advertising expenses from the real estate agency in the accounts of the agricultural business, which was not allowed because the real estate agency was not registered for VAT.  The authorities discovered the error in 1977 and took legal action to assert their claim in 1978.  The Supreme Court held the claim time-barred, reasoning that the authorities *could have* established that non-deductible expenses had been deducted in 1973.  Even though the tax authorities did not, in fact, learn of the error until 1977, their claim was still barred.  U 1981.72 H.[1]

---

[1]     Danish cases are referenced by the publication in which they appear, followed by the year in which they were published, the page in which the case has been reported, and the first initial of the court rendering the decision. Thus, U 1981.72 H refers to the case published in the Danish Weekly Law Report ("Ugeskrift for Retvæsen"), decided in 1981, found at page 72, and issued by the Danish Supreme Court ("Højesteret").  I also refer to cases reported in the Journal of Tax Law ("Tidsskrift for Skatteret"), which begin TfS, and to cases decided by the Eastern High Court (Østre Landsret, indicated with an "Ø"), and the Western High Court (Vestre Landsret, indicated with a "V").

22.     Another important example can be found at TfS 1988.581 V.  At issue in that case was the tax treatment of interest expense relating to a loan provided by an exchange company, where the taxpayer used the loan to purchase sovereign debt.  The loan, taken out in 1978, was redeemed in 1979 when sovereign debt certificates were withdrawn.  In 1983, the tax authority began an investigation into the exchange company that issued the loan, and in 1986, it discovered that the debt certificates were covered by a forward transaction.  As a result, the taxpayer had not been entitled to deduct interest on the loan.  The question for the court was whether the tax authority should have immediately raised a claim against the taxpayer in 1979, or whether it was entitled to await the results of the investigation that began in 1983.  Although the court did not fault the tax authority's initiation and conduct of its investigation, it nevertheless held that the tax authority's claim was time-barred.  In 1979, the tax authority had prepared circulars about loan arrangements just like the one at issue.  Thus, the High Court concluded that "the circular issued by the State Tax Directorate on 29 October 1979 on loan arrangements of the nature in question had given the tax authority the opportunity to immediately raise the tax claims in question . . . instead of awaiting the results of the investigation, which was not commenced until 1983."  In other words, the tax authority *should have known* about its claim years before it asserted the claim, and even though, in fact, it did not discover the facts that led it to seek penalties from the taxpayer until years later.

23.     There are many more recent cases applying the statute of limitations to claims brought by the tax authority, only some of which I will describe in further detail here.  One such example is reported at TfS 1997.403 B.  That case concerned whether an entity was liable for VAT in the year 1984, or whether the tax authority was only able to bring the claim in 1992.  The record was "ambiguous" (to quote the court) as to whether the defendant mortgage fund was conducting

business in 1984. But because the local tax authorities received *some* information suggesting that the defendant was an operating entity in 1984, they "should have investigated." As the court put it, "when the local tax authority was informed in 1984 that the right of use lien continued, the tax authority should have investigated the matter further at that time . . . ." In its conclusion, the court stated: "the very fact that the information was ambiguous . . . should have led the [tax authority] to make its position clear as early as 1984 or 1985."

24.     Another example is reported at TfS 2002.415 LSR. There, the tax authority determined that a company's VAT liability was significantly higher than the company had reported, and in the year 2000, increased the company's VAT liability by nearly DKK 500,000. The National Tax Tribunal held that part of the tax authority's claim was time-barred, reasoning that the company had submitted VAT returns on an ongoing basis, and based on those submissions, the tax authority *should have known* that it had a claim against the company.

25.     The case reported at TfS 2002.617 helps to illustrate the principle that the tax authority will be deemed to be aware of its claim from the moment it receives information relating to that claim. There, the tax authority received five invoices for fee income from two companies, Jetair ApS and Flemming Frandsen Aircraft Sales ApS. The taxpayer was the manager of both Nielsen ApS and Danish Air Service ApS. The invoices concerned services relating to aircraft chartering agreements between Jetair ApS and Flemming Frandsen Aircraft Sales ApS and the two companies owned by the taxpayer, Nielsen ApS and Danish Air Service ApS. However, four of the invoices had been issued by Nielsen UK Limited, a UK company owned by the taxpayer. On receipt of the invoices, the tax authority carried out appropriate investigations by obtaining information on the companies concerned, including by contacting the UK authorities to establish whether there was a possible outstanding tax claim. On 25 May 1994, the tax authority received

the accounts of the UK company from the UK authorities and was informed that the UK company

had been struck off the company register on 12 January 1993.  The taxpayer could not prove that

the fee payments had been made to the Danish companies, so the fees had to be considered a

taxable distribution to the taxpayer.  In 1995, the tax authority increased the taxpayer's tax

assessments for the years in question by all the fee income because the taxpayer was considered

the rightful recipient of the fee payments.  The Eastern High Court found that when the tax

authority received the reply from the UK authority on 25 May 1994, it *should have known* that it

had a claim against the taxpayer.  Since the tax authority did not bring its case until 30 June 1999,

the tax claims were considered to be time-barred.

26.      The claimant does not need to know the full extent of its claim in order for the

statute of limitations to begin running.  This principle is clearly illustrated by the case reported at

UfR 2010.261 H, which concerns environmental damage.  In that case, a company operated a

laundry and dry-cleaning business that used chlorine-based solvents.  The county in which the

company was located detected pollution on the company's property in 1999 and engaged an

engineering firm to undertake a study.  In August 1999, the firm reported some pollution on the

company's property that could have an effect on groundwater.  A further study, completed in

November 1999, confirmed the hazard.  The county engaged the company in discussions about the

results of the studies, but the parties could not reach agreement on how to proceed.  In 2003, the

county issued the company an order to conduct a study designed to assess whether the pollution

could be eliminated through drilling.  The company initiated legal action, arguing that the county's

efforts were too late.  The Supreme Court agreed, finding that from the moment the county received

the August 1999 report, it "could no longer be considered to have been unjustifiably unaware of

8

its claim," and the limitations period "ran from the receipt by [the county] of the report of 3 August 1999," or a slightly earlier date on which "the county may have received a draft report."

***The Rules Of Limitation Do Not Include An Exception For Fraud***

27.     It should be clear from the discussion above that neither the statute of limitations, nor the inquisitorial procedure, nor the investigative obligation, are tolled or otherwise diminished in instances where a taxpayer provides the tax authority with incorrect information, whether by accident or on purpose.  The duty to render an informed decision, the statute of limitations, and the investigative obligation all apply with full force even in cases of fraudulent or potentially criminal conduct by the taxpayer.  I am not aware of any case stating that the statute of limitations is automatically suspended in cases involving potential fraud by the taxpayer.

28.     I have reviewed a Declaration of Professor Mads Bryde Andersen filed on November 24, 2020 in this case.

29.     Professor Andersen states that numerous cases have "confirmed the principle that no suspension [of the statute of limitations] will take place if the taxpayer provided all relevant and truthful information to the tax authority."  ECF No. 144 at ¶ 41.  I agree with that statement.

30.     Professor Andersen also states that a claimant "'should not have' known its claim for repayment when it has relied on fraudulent information, even though the truthful information might have been known had the creditor taken steps to investigate the case further."  ECF No. 144 at ¶ 37.  For the reasons stated above, I disagree with this statement, and it is not supported by the cases that Professor Andersen references.

31.     The oldest case Professor Andersen cites, U 1935.715 H, does not involve any allegation that a taxpayer provided "fraudulent information," nor does it address whether the tax authorities "should have become aware" of their claim.  In that case, in 1925, a public company

9

decided to transfer DKK 1 million from a liquid reserve fund to the company's share capital.
Through the company's tax return, the Copenhagen tax authorities became aware of the
transaction, which they considered taxable for the shareholders. The shareholders disputed that
conclusion and did not believe they had received any income from the transfer of the amount to
the company. This led to a lawsuit, and in 1931, the Copenhagen tax authorities prevailed on the
issue of whether the transaction was equivalent to a taxable bonus share. The Copenhagen tax
authorities therefore increased the tax assessments for a number of taxpayers in Copenhagen. The
tax authority of Vordingborg (a town roughly 100 km south of Copenhagen) learned about the
lawsuit and increased the taxable income of a taxpayer resident in Vordingborg in 1933. The
taxpayer argued that the claim was time-barred. The Supreme Court found that the limitation
period only began to run when the Vordingborg tax authorities became aware of the situation.

32.     That decision has nothing to do with false or criminal information being provided
to—or the truth being withheld from—the tax authorities. Taxpayers considered that their bonus
was not taxable as a bonus share because the public limited company received a capital
contribution from third parties—a view that could still be asserted today. Thus, the decision does
not contribute to the interpretation of the significance of a taxpayer providing false or fraudulent
information to the tax authority.

33.     In a second case that Professor Andersen cited, TfS 1988.641 V, a taxpayer
provided incorrect information to the tax authorities, but there was no reference to that information
being fraudulent. There, the High Court concluded that the tax authority could not be blamed for
failing to carry out further investigations where the tax authority had no information "which might
give rise to doubts as to the accuracy of the information." Thus, the High Court found that the tax

10

authority could not be blamed for failing to carry out further investigations at the time, and the statute of limitations was suspended.

34.     In a third case Professor Andersen cites, U 1994.168 H, it is not apparent that the Supreme Court thought that the taxpayer committed an offense.  Similarly, in a fourth case, TfS 2001.171 Ø, the High Court found that the taxpayer acted in good faith, and there was no suggestion that the taxpayer acted criminally or fraudulently.  In a fifth case, U 2006.1492 H, the Supreme Court examined whether the tax authorities should have known about their claim when it came to light during criminal proceedings (in 1995), or instead when the prosecutors provided that information directly to the tax authorities at a meeting (in 1997).  The court concluded that the limitations period commenced from the date of the meeting rather than the criminal proceedings, but their reasoning had nothing to do with whether the omission of information from the tax authorities was fraudulent or criminal.  Finally, the last case Professor Andersen cites, U 2018.3119 H, has nothing to do with a question of limitation, and there was no assertion that any claim at issue in that case was time-barred.

35.     Contrary to the opinion of Professor Andersen, if a claim arises as a result of fraudulent or criminal conduct—including criminal concealment or fraudulent acts towards the tax authority—then it is subject to the very same limitations rule as any other claims.  Professor von Eyben advances a similar view:

> Claims for damages arising from criminal offences are in principle covered by the general statutory limitation periods, i.e. three years from the occurrence of the damage or loss, with the possibility of suspension within the absolute time limits of 10 years – but 30 years in the case of personal injury and environmental damage – after the end of the injurious act.  Unlike earlier in accordance with section 16 of the Danish Act on the Entry into Force of the Criminal Code (*Ikrafttrædelsesloven*), there is therefore no substantive, longer limitation period or a more lenient suspension rule for the injured party.

11

*Forældelse*, 2nd ed., 2019, page 397. In short, in relation to the rules of suspension, it is not relevant whether a claim arises from an act that could be considered fraudulent or even criminal.

\* \* \*

Pursuant to 28 U.S.C. § 1746(1), the undersigned Anders Ørgaard, state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 22, 2021

_____
Anders Ørgaard
Aarhus, Denmark